## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW JOHN SHEFFER** | : | |
| **Plaintiff** | : | |
| **V.** | : | **CIVIL ACTION NO. 4:18-CV-2080** |
| **CENTRE COUNTY, et al** | : | |
| **Defendants** | : | |

### AMENDED COMPLAINT

FILED
SCRANTON

JAN 11 2021

PER _____
DEPUTY CLERK

1. This is a civil action for damages brought pursuant to the United States Constitution and 42 U.S.C. § 1983 resulting from deprivations, under color of law, of Plaintiff's rifghts under the fourth, eighth, and fourteenth Amendments to the United States Constitution and for Tortious behavior under Pennsylvania law.

2. This court has jurisdiction over these claims pursuant to Article III, section 1 of the Constitution and 28 U.S.C. § § 1331, 1332, and 1343. Plaintiff also invokes the pendant jurisdiction of this Court to decide statutory and common law tort claims.

### PARTIES

3. Matthew John Sheffer, the Plaintiff, is a citizen of the United States and a resident of Clearfield County.

4. Jefferey Ebeck, a Defendant was at all times relevant to the incidents which are the subject of this lawsuit, an officer of the State College Barracks of the Pennsylvania State Police Department.  The acts of Defendant Ebeck which are the subject for this lawsuit were undertaken in the regular course of his employment for Defendant Centre County Municipality.  He is sued in his individual capacity.   Upon information and belief Defendant Ebeck is a resident of Centre County.

5. Crystal Hundt, a defendant, was at all times relevant to the incidents which are the subject of this lawsuit, an Assistant District Attorney for the the Centre County District Attorney's Office. The acts of Defendant Hundt which are the subject for this lawsuit were undertaken in the regular course of her employment for Defendant Centre County. She is sued in her individual capacity. Upon information and belief Defendant Hundt is a resident of Centre County.

6. "Jane Doe", a defendant, was at all times relevant to the incidents which are the subject of this lawsuit, an Assistant District Attorney for the the Centre County District Attorney's Office. The acts of Defendant "Jane Doe" which are the subject for this lawsuit were undertaken in the regular course of his/her employment for Defendant Centre County. He/She is sued in thier individual capacity. Upon information and belief defendant "Jane Doe" is a resident of Centre County.

7. Centre County Municipality, a defendant, is a municipal corporation charged with and responsible for appointing and promoting, through elections and law, the members of the Centre County Judiciary, the Centre County District Attorney's Office and the State College Barracks of the Pennsylvania State Police and for the training, instruction, discipline, control, and conduct of the local branch of government and its personnel. At all relevant times, Defendant Municipality had the power, right and duty to control the manner in which the individual Defendants carried out the objectives of their employment and to see that all orders, rules, instructions and regulations promulgated were consistent with the Constitution and the laws of the municipality.

## STATEMENT OF THE FACTS

8. On July 28, 2016 an accusation of a sexual nature was made against the Plaintiff. Defendant Ebeck was assigend the case to investigate and he proceeded to the Complainant's home to conduct a "brief facts interview". The Complainant and her mother were then scheduled for a forensic interview and medical exam to be held at the Child Advocacy Center (CAC) in Bellefonte, PA.

9. On August 1, 2016 Defendants Ebeck, Hundt and Jane Doe met the complainant and her mother at the CAC. At such time, during the interviews, the Defendants were made aware that the complainant had an abusive father who had manipulated her to do what he wanted her to do in the past, and that her father had an abusive/manipulative behavior pattern. This information was reiterated during the forensic interview where the complainant felt the need to inform the Interviewer that she "does what her dad tells her to do" and that she "didn't want to "disappoint him". This information was important enought to even make it into it into a report done by Children and Youth Services of Bellefonte, PA.

10. During the forensic interview, the complainant alleged that she was forcefully and violently penetrated and raped both digitally and by penile penetration well over 10+ times. She alleged that she repeatedly screamed and yelled for it to stop. All the allegations were said to have occured at the home the complainant and her mother shared with the Plaintiff in the middle of the town of Millheim, PA. According to the complainant these acts were even said to occur while she slept, including the Plaintiff alleg<sup>edly</sup> undressing her and having sex with her. She stated during the interview that she never woke or felt anything and even stated that one incident happened before she went to school with her mother in the house. The complainant made these accusations during the interview while being playful and showing no emotion that would indicate she had gone through such trauma.

11. During the medical exam, the complainant and her mother told the examiner conflicting facts. One said that the complainant was on her period and the other said that she was not at the time of the alleged incidents. However despite the accusations of repetitive violent and forceful trauma to the complainant's genital area the medical exam caame back to show that the complainant had a fully smooth, intact hymen, that lacked any signs of rips, tears, lacerations or even any scarring that would indicate healing from any type of previous trauma.

12. During this same period of time, Defendant Ebeck, according to his report, conducted a canvassing of the neighborhood where these allegations were said to have occured. Defendant Ebeck didn't find one person to corroborate the yelling and screaming that the complainant alleged that she did. Despite Defendant

Ebeck's claim of canvassing the neighborhood and knowing that the complainant was at some time involved in the daycare within 5 minutes from their home, he never stopped to question anyone there to see if the complainant would have even been home during the time in question.

13. Defendant Ebeck knew, according to his fraudulent report, that the Plaintiff was working at Centre Hills Country Club in State College, PA, however not once did the Defendant check to see if the Plaintiff would have even been home to conduct the acts with which he was accused of.

14. During the investigatory stage, in which the medical exam and the CYS report was either destroyed and/or disappeared, Defendant Ebeck consulted with Defendant Hundt and/or Jane Doe to obtain advice on what to keep in his report and and what to remove in order to show probable cause so that he could obtain the warrant for the Plaintiff. It was during this period of time that the Defendants decided to intentionally omit the facts or evidence previously mentioned. The Defendants omissions were the exact things that any judge would wish to know when making a determination of probable cause, because they are material and give serious doubts that the acts which the Plaintiff was accused of even occurred.

15. Then on January 24, 2017 with prior guidance of Defendant Hundt and/or Jane Doe, Defendant Ebeck blatantly with no regard to the truth of the matter or to the Plaintiff's rights presented only the facts to the Magistrate that he knew would secure the arrest warrant for the Plaintiff. Defendant Ebeck intentionally misrepresented facts and omitted any evidence that would make it seem less likely a crime occurred.

16. Also on Janurary 24, 2017, the Plaintiff was lawfully resting at his home with his girlfriend when multiple officers from the Lewistown Branch of the Pennsylvania State Police Department, acting on behalf of the Defendant's fraudulent information, forcefully stormed the Plaintiff's home seizing and detaining him while they unlawfully searched the Plaintiff's home, all without a proper warrant establishing probable cause. The Plaintiff, handcuffed, was then transported to Centre County Correctional Facility (CCCF), where he was arraigned and his bail was preset to the excessive amount of $250,000, an amount designed to ensure pretrial incarceration for anyone accused of any sexual crime in Centre County, PA since 20___. Prior to the filing of any charges the Defendant's did knowingly

manipulate the probable cause and bail determinations to ensure the loss of the Plaintiff's rights.

17. The Plaintiff never did any of the acts with which he was accused of, he or the complainant were not even home well over half of the time that the acts were said to have occurred. Defendant Ebeck even knew that the Plaintiff was working due to the fact that he stated it in the investigative report used for the affidavit, however he never followed through.

18. Prior to the preliminary hearing held over 14 days later, the Plaintiff was interviewed by the Centre County Bail Agency to determine risk for pretrial release. The Bail Agency determined that the Plaintiff was a good candidate for pretrial release and their risk assesment was low. However at the Preliminary hearing, due to the practice and policy of Centre County, the Plaintiff was denied supervised bail or any other form of bail, due several reasons which included in the words of the Magistrate the "seriousness of the charges", and the fact that they were sexual based charges. Instead the bail was to remain at the excessive amount of $250,000, which was designed to ensure that those accused of sexual based crimes would stay in pretrial confinement.

19. During the preliminary hearing, Defendant Ebeck took the stand and lied to the court when he stated to the effect that the complainant acted like a scared child during the interveiw. After watching the video from the interveiw of the complainant one could tell that this was contrary to the truth. The complainant throughout the interview was relaxed and even playful throughout the interview and she even started drawing on the board.

20. On or around March _8_ of 2017, the Plaintiff by and through his attorney filed and sent an Informal Discovery Request to the Centre County District Attorney's Office, requesting all information and evidence that pertained to the Plaintiff's innocence or guilt. However the DA's office did not comply with the Plaintiff's discovery request till after his first pretrial conference and when they did they stated that they gave the Plaintiff all the evidence that the DA's office had in their possession

21. On June 08, 2018 the Plaintiff after receiving statistical information on the those approved for supervised bail from Centre County Bail Agnecy, filed this lawsuit against multiple defendants, without fully knowing the extent of the violation to his constitutional rights, and/or the extent to which the Defendant's Ebeck, Hundt, and/or any Jane Doe went to destroy and/or conceal exculpatory evidence material to the complainant's accusation and

the Plaintiff's innocence.

22. On or around  August 12, 2018 3 days prior to the Plaintiff's first trial, the complainant's
    mother asked  Deputy District Attorney Shawn McGraw, a new DA who took over after
    the old one got removed, if the Plaintiff had received the medical exam and/or the CYS
    reports for his defense  The Deputy DA then contacted the appropriate agencies and asked
    for copies of the original reports, since the original copies had been destroyed and/or
    concealed.  At a hearing on the matter of the missing evidence, Deputy DA McGraw
    admitted to the court that "after taking a poll of the significance of the medical exam and
    the intact hymen, the DA's office was in agreement that the medical evidence implied no
    penetration" or that the complainant very well could be a virgin.

23. On October 22 , 2018 Defendant Ebeck, while testifying about the lack of investigation
    stated to the effect, when asked why he only investigated and presented certain facts,
    that his investigation methods were and are directed by members from the DA's office,
    usually the ADA that is assigned to the case.

24. On February 13 , 2020 after the Plaintiff had gone through the emotional turmoil of 2 trials,
    both of which ended in mistrials by hung juries,  the Commonwealth was able to convict
    the Plaintiff using tactics that undermined the legal system, to include improperly
    bolstering the credibility of a witness, in particularly their main witness.

25. In April  8  , 2020 the Plaintiff filed an appeal, with the help of the Penn State Criminal
    Justice Project, to the Pennsylvania Superior Court on several grounds including the
    improper bolstering that was mentioned previously.  The Plaintiff is currently awaiting
    the outcome of that appeal.

26. The Defendants acted as aforesaid with any reasonable cause and contrary to the
    Pennsylvanaia Rules of the Court and Laws of the Commonwealth of Pennsylvania to the
    detriment of the Plaintiff and his guaranteed constitutional rights.

## FEDERAL CAUSES OF ACTION

27. Paragraphs 1 through 26 are adopted and incorporated by reference

28. Acting under color of law and the authority of Defendant Centre County Municipality, Defendants Ebeck, Hundt, and/or any Jane Doe intentionally, negligently, and with complete and deliberate indifference for Plaintiff's rights caused Plaintiff to be deprived of his constitutional rights, including but not limited to those under the Fourth, Fifth, Eighth, and Fourteenth Amendments in the following manners:

29. Acting on the fraudulent information and decisisons of Defendants Ebeck, Hundt, and/or any Jane Doe, the Lewistown Branch of the Pennsylvania State Police did forcefully tresspass into the Plaintiff's home, detain him, and then proceed to unlawfully search the Plaintiff's domicile as if the Plaintiff was a deranged and dangerous criminal, in violation of Plaintiff's right to be free from unreasonable search or seizure under the Fourth Amendment.

30. Through the manipulation of the courts by destroying evidence, and modifying investigative reports, 6 months prior to any charge being filled, Defendants Ebeck, Hundt, and/or any Jane Doe did cause the deprivation of the Plaintiff's liberty by subjecting him to unwarranted and unreasonable restraints on his person without due process in violation of his rights under the Fifth and Fourteenth Amendment.

31. Through the actions mentioned in Paragraph 30, Defendants Ebeck, Hundt, and/or any Jane Doe did manipulate the bail decision of the Plaintiff, thereby causing him to be stradled with excessive bail in violation of his right to have reasonable bail under the Eighth Amendment

32. That as a result of the trespass, excessive bail,  false arrest, and imprisonment, Plaintiff Matthew John Sheffer, being a citizen of the United States, was subjected to deprivations of his rights, privileges,and immunities secured by the Constitution of the United States and the laws of the United States, sustained deprivations of his personal liberty, invasions of privacy and violations of his civil rights, he has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarassment, fear, and defamation of  his character and reputation, was prevented from attending his usual duties and employment, and underwent pschological treatment

33. Defendant Centre County Municipality, under the color of law, intentionally, negligently, and with complete and deliberate indifference for Plaintiff's rights authorized, permitted, and tolerated the custom, policy, and practice of the unconstitutional and excessive use of bail by members of the Centre County Judiciary, in the following manners:

34. Defendant Centre County Municipality failed to elect, promote, and supervise members of the Centre County Judiciary who would enfoce the laws and protect the constitutional rights of the people of Centre County.

35. Defendant Centre County Municipality failed to require the Centre County Judiciary to promulgate procedures and policies for the reasonable use of bail that were consistent with the 8th, 5th, and14th Amendments of the U.S. Constitution.

36. Defendant Centre County Municipality permitted the custom, policy, and practice of using a wealth based detention system, thru the sole use of excessive monetary bails devoid of the protections of due process, that affected all those who were indigent and accused of any sex-based crime in Centre County, to exist and to be followed.

37. As a result Defendant Centre County Municipality proximately caused the deprivation of the Plaintiff's rights under the 8th, 5th, and 14th Amendments to the United States Constitution.

## STATE CAUSES OF ACTION
## COUNT 1

38. Paragraphs 1 through 37 are adopted and incorporated by reference

39. Defendants Ebeck, Hundt, and/or any possible Jane Doe did intentionally, negligently, and with complete and deliberate indifference for Plaintiff's rights cause the unlawful detention and false imprisonment of the Plaintiff through the failure to preserve exculpatory evidence, modification of investigative reports and/or affidavits and making false statemements of fact prior to the filing of charges.

40. Throughout the course of the investigation into the Complaint made against the Plaintiff,

Defendant Ebeck was made aware of several pieces of evidence that contradicted the accusations that were made against the Plaintiff. These pieces of evidence were material to the determination of probable cause, and under the guidance of Defendant Hundt and/or and Jane Doe, were knowingly destroyed and/or omitted due to the fact that they powerfully undermined the reliability of the accusations lodged against the Plaintiff.

41. The complainant initially accused the Plaintiff of holding her down and violently raping her repeatedly well over 10 times and digitally penetrating her "over and over again". She was 11 years old at the time and stated that she never felt any pain or there was never any bleeding. The complainant claims that she yelled and scremed multiple times. The accusations were even so far fetched that she claimed there were a few incidences that even happened while she was asleep and the only way she knew it happened was because there was a condom wrapper on the floor and her pants were down around her ankles, and that one incident happened right before school, yet each and every time she never felt anything or woke up.

42. Despite the accsation of being penetrated to the extremes that the complainant alleges, the medical exam that was done on August 1, 2016 showed the complainant to have a perfectly smooth, fully intact hymen, devoid of any tears, rips, and/or lacerations. There were no signs at all of any previous healing that would indicate prior trauma to the extremes that  the complainant alleged. Defendant Ebeck under the guidance of Defendant Hundt and/or and Jane Doe knowingly failed to preserve this medical exam and subsequently removed any mention of it from any investigative report or affidavit.

43. During the Forensic Interview on August 1, 2016, the complainant admitted that she was and is heavily influenced by her father to do what he wants because she does not want to disappoint him. This manipulation was of such a vital significance that it made it into a report generated by the Children and Youth Services (CYS) in Bellefonte Pa. This information was even in an affidavit for a PFA for the mother of the complainant done by the same Pennslyvania State Troopers barracks that Defendant Ebeck worked for and had access to.  This evidence was also intentionally destroyed and/or concealed and removed from any investigative report done by Defendant Ebeck under the guidance of Defendant Hundt and/or and Jane Doe

44. The accusations were said to have taken place in Millheim, PA specifically on Penn Street, which is a busy thoroughfare in the middle of town. The house that the Complainant lived in with the Plaintiff was surrounded by houses on all sides within 10-15 feet. Defendant Ebeck canvassed the neighborhood where the accusations were supposed to have taken place and could not find one neighbor to validate the yelling and screaming that the Complainant alleged she repeatedly did. Defendant Ebeck, under the guidance of Defedants Hundt and/or any Jane Doe, knowingly and intentionally ommitted this fact from any investigateive report and subsequent affidavit.

45. Defendant Ebeck, under the guidance of Defedants Hundt and or any Jane Doe, intentionally omitted from his report any discrepencies or inconsistencies that any reasonable person would and/or could use to conclude that the Complainant's accusation against the Plaintiff was false. Facts that include 1) lack of any feelings or pain despite the violent and forceful accusation; 2) the medical exam that showed an intact hymen with no signs of previous healing; 3) the lack of any emotion during the Forensic Interviewer; 4) the lack of any real discernable timeline or any specific details; 5) no corraboration of any yelling or screaming despite living in a close neighborhood/town; 6) the Complainant couldn't even describe what a penis looked like despite allegedly seeing it as much as she did; 7) the fact that the Complainant has been manipulated in the past by an abusive father, and "does what he tells her to do"; 8) the lack of any real investigation into whether the accusations could have even occurred despite knowing where the Plaintiff worked, and where the Complainant attended Daycare.

46. Defendant Ebeck, under the guidance of Defedants Hundt and/or any Jane Doe, also fraudulently misrepresented facts during the application process for the arrest warrant, and repeated during a Preliminary hearing on the _____ of February 2017, that the Complainant appeared like a scared "victim" to ensure that he receieved the outcome that he and Defedants Hundt and or any Jane Doe had preplanned.

47. Defendant Ebeck, under the guidance of Defedants Hundt and/or any Jane Doe, did intentionally with no regard for the truth or the Plaintff's rights cause the unlawful false arrest and imprisonment of the Plaintiff through the destruction and/or concealment of exculpatory evidence and the omission and misrepresentation of said facts that would show the accusation against the Plaintiff was unreliable and undermine the determination of probable cause.

48. At no point in time throughout the multiple stages of court appearances and proceedings of the Plaintiff, did Defendants Ebeck, Hundt, and/or any Jane Doe attempt to correct the injustices done to the Plaintiff.  In fact the Plaintiff would never have known about the omissions of evidence, concealment or destruction of evidence and the modification of investigative reports had it not been for the Complainant's mother asking the new District Attorney assigned to the case if the Plaintiff had received them over 2 years later, after Defendant Hundt was removed.

## COUNT II AND COUNT III:
## DUE PROCESS AND EXCESSIVE BAIL  CLAIM

49. Paragraphs 1-48 are adapted and incorporated by reference.

50. Defendant Ebeck, under the guidance of Defendants Hundt and/or any Jane Doe, did intentionally and with no regard for the Plaintiff's rights manipulate the bail decision of the Plaintiff to be preset at an excessive amount through the omissions of evidence, concealment or destruction of evidence and the modification of investigative reports that has been previously mentioned.

51. Through the aforesaid actions, Defendants Ebeck, Hundt, and/or any Jane Doe did perpetrate a fraud to the court and deny the bail authority the ability and power to make an informed decision on the bail of the Plaintiff, due to the fact that Defendants Ebeck, Hundt, and/or any Jane Doe conspired and decided, prior to the filing of charges, to make sure that "any mitigating factors that may bear upon likelihood of conviction" would not be presented to the bail authority as required by the Rules of the Court and Due Process.

52. Defendants Ebeck, Hundt, and/or any Jane Doe, did carry on this conspiracy from investigation throughout multiple court proceedings to include several bail modification requests over the course of more than 2 years until Defendant Hundt was removed from the case of the Plaintiff, and a new District Attorney was assigned.

## COUNT IV:

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Paragraphs 1-52 are adapted and incorporated by reference.

54. The Plaintiff, upon arrival at Centre County Correctional Facility (CCCF) in Bellefonte, PA, was housed at A-2, a unit that was at that time designated a sex offender and Mental Health Unit. A-2 Housing Unit was also used for suicide prevention and a behavioral step-down unit. Multiple inmates were housed on that unit who had extreme behavioural problems that included but were not limited to: yelling and screaming at all times day and night; throwing objects; banging on vents, walls, beds, and/or pipes; using bodily discharges as weapons, throwing objects or writing utensils; and also the occasional acts of random violence. Countless nights the Plaintiff was deprived of sleep and afraid he would be a target of random violence.

55. Every time the Plaintiff attended court proceedings or walked off the Housing unit at CCCF, he was threatened and/or harassed by other inmates who were housed at CCCF, some of whom had extensive histories of violence. The Plaintiff was embarassed and humiliated by being labeled a "pedophile", "chester", "toucher", and other derogatory terms walking down the hallway or while being held in a holding tank awaiting transport to court proceedings by other inmates.

56. Between 2017 and 2019, while at CCCF, the Plaintiff submitted request forms seeking medical help from the Medical and Mental Health Departments of CCCF for multiple issues. The Plaintiff sought mental health counseling for the severe emotional distress he was facing that was causing problems like depression, nightmares, sleeplessness, anxiety, fear, and loss of appetite and focus. The Plaintiff sought medical treatment for having blood in his urine and feces, which was a first time problem in over 35 years of the Plaintiff's life.

57. The Plaintiff was subjected to the emotional trauma of 3 seperate trials, two of which ended in deadlocked juries, while the third one, after extensive prosecutorial misconduct, ended in a guilty verdict and the Plaintiff being sentenced to 20-40 years in a state prison. Seeing the injustice that was done to the Plaintiff, the Penn State Criminal Justice Project stepped up and is currently helping the Plaintiff to overturn his conviction.

58. After being sentenced the Plaintiff was transferred to SCI- Camp Hill and was housed in A-Block, a derelict unit infested with cockroaches and mice, during classification which took over 3 months. Before arriving there the Plaintiff was told to send all legal work home due to the dangers of people knowing the charges he was faced with and possible assualt or even death.  While at SCI- Camp Hill the Plaintiff heard of 4 stabbings within the jail and saw multiple inmates get assaulted due to their charges, some of which were similar to the Plaintiff's.

59. The Plaintiff was then transferred to SCI- Houtzdale, where the Plaintiff again witnessed multiple assaults and stabbings, some also based off of similar charges.  Then in September of 2020, an inmate housed at the same jail was killed who had smiliar charges to the Plaintiff.

60. The Plaintiff again sought mental health aid after being transfered to SCI-Houtzdale to deal with the ongoing emotional trauma of being wrongfully convicted and incarcerated and watching those who had similar charges get assaulted and even killed.  He was     also suffering from emotional turmoil while waiting his conviction to be overturned.    The Plaintiff consulted mental health due to experiencing a list of issues that included fear, anxiety, stress, paranoia, depression, sleeplessness, loss of appetite, loss of focus, and other issues.

61. Through the intentional actions of Defendants Ebeck, Hundt, and/or any Jane Doe, that exceeded all possible bounds of decency, the Plaintiff has suffered and will continue to suffer severe psychological harm, emotional distress, humiliation, embarassment, fear and defamation to his character.  Due to the aforesaid actions, the Plaintiff has and will continue to undergo psychological treatment in the future.

## COUNT V: MALICIOUS PROSECUTION

62. Paragraphs 1-61 are adopted and incorporated by reference.

63. Defendant Ebeck, under the guidance of Defendants Hundt and/or any Jane Doe, through the

aforesaid actions did initiate criminal proceedings against the Plaintiff.

63. The proceedins against the Plaintiff are in the process, with the help of Penn State Criminal Justice Project, of being overturned and ending in the Plaintiff's favor.

64. As stated previously Defendant Ebeck, under the guidance of Defendants Hundt and/or any Jane Doe initiated the action without probable cause, due to the fact the Defendants knowingly failed to preserve the CYS report and Medical Exam and subsequently modified Defendant Ebecks investigative reports to ensure there was no mention of said exculpatory evidence, the Defendants then lied to the Court to ensure the granting of the arrest warrant of the Plaintiff and the subsequent loss of the Plaintiff's Constititional rights.

65. Through the previously mentioned actions, Defendants Ebeck, Hundt and/or any Jane Doe did intentionally and with no regard for the Plaintiff's protected rights cause the Plaintiff ` to be siezed, undergo 3 seperate trials, be convicted, sentenced and deprived of his liberty for over 4 years while he sought justice for the egregious and malicious conduct of the Defendants, whom had sworn to uphold and protect the law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully prays this Court:

66. Award to Plaintiff compensatory damages in an amount to be determined at trial but not less than the amount of $2,000,000, exclusive of costs and damages for delay, jointly and severally against the Defedants for the matters alleged in this Complaint;

67. Award to Plaintiff punitive damages in an amount to be determined at trial against all Defendants except Defendant Centre County Municipality.

68. Award to Plaintiff reasonable costs and attorney fees.

69. Grant such other and further relief as this court deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff hereby requests trial by Jury in the action for the issuas so triable.

Respectfully Submitted:

Matthew John Sheffer- NV- 7636;
Pro se Lititgant
SCI-Houtzdale
State Route 2007
PO BOX 1000
Houtzdale, Pa 16698

## CERTIFICATE OF SERVICE

I, Matthew John Sheffer, pro se Appellant, do hereby certify that on this _2nd_ day of _January, 2021_ , have personally caused to be served upon the following a true and correct copy of the foregoing _Amended Complaint_ depositing a copy of the same in the SCI Houtzdale Mail Service in Houtzdale, PA.

X _____

Matthew John Sheffer, NV-7636, Pro Se
SCI- Houtzdale
PO Box 1000
Houtzdale, Pa 16698

Robert A. Mix, Esq.
Lee Green & Reiter
115 East High Street Lock Drawer 179
Bellefonte, Pa 16823

Keli M. Neary, Esq.
Michael Scarinici, Esq.
Office of Attorney General of Pennsylvania
Civil Division, Lititigation Section
Strawberry Square
Harrisburg, PA 17120

Robert J. Krandel, Esq.
Supreme Court of Pennsylvania
Administrative Offices of Pa Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

Matthew Sheffer - NV7636
SCI- Houtzdale
State Route 2007
PO Box 1000
Houtzdale, PA 16698

RECEIVED
SCRANTON
JAN 1 1 2021
PER_____
DEPUTY CLERK

Office of the Clerk
U.S. District Court
Middle District of PA
U.S. Courthouse
235 N. Washington Ave.
P.O. Box 1148
Scranton, PA 18501